**Heather B. Del BOSCO et al., Plaintiffs,**

v.

**UNITED STATES SKI ASSOCIATION, Defendant.**

No. 91–C–2026.

United States District Court, D. Colorado.

Dec. 21, 1993.

Scott Larson, James Lapin, for plaintiffs.

Larry N. Harris, for defendant.

MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiffs Heather Del Bosco and her father, Armando Del Bosco, both Colorado residents, commenced this diversity action asserting claims for negligence against the defendant United States Ski Association, a Utah corporation. Defendant has moved for summary judgment arguing that the plaintiffs' claims are barred by: (1) an exculpatory agreement; (2) the Colorado Ski Safety ry agreement; (2) the Colorado Ski Safety and Liability Act, Colo.Rev.Stat. §§ 33–44–101 et seq.; and (3) the Colorado assumption of risk statute, Colo.Rev.Stat. § 13–21–111.7. Plaintiffs have responded by opposing the motion.

The issues have been fully briefed and oral argument would not materially facilitate the decision process. Jurisdiction exists under 28 U.S.C. § 1332.

On January 15, 1991, Heather Del Bosco fell while participating in a Trophy Series Ski Race. She allegedly suffered extensive injuries in the fall that resulted in multiple surgeries to repair her leg and ankle. Plaintiffs allege that:

> "[b]ecause of the physical characteristics of the course, the Defendant was negligent with respect to its inspection, supervision, design, approval, and duty to warn racers ... of an unreasonably dangerous and hazardous condition which existed" on the race course at the time of the accident. (Complaint at ¶ 7.)

### A. *Summary Judgment Standard.*

Summary judgment is proper if the pleadings, depositions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a properly supported summary judgment motion may not rest upon the mere allegations of the complaint, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A factual dispute is material only if, under the governing law, its resolution might affect the action's outcome. A factual dispute is genuine only if a reasonable fact finder could return a verdict for the nonmoving party. *Id.*

### B. *Exculpatory Agreement.*

#### 1. *Armando Del Bosco's Claim.*

Defendant argues that Armando Del Bosco's individual negligence claim is barred by a release form signed by the Del Boscos

agreeing to hold the defendant harmless in the event Heather was injured while skiing.

■ The determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to decide. *Jones v. Dressel,* 623 P.2d 370, 376 (Colo. 1981).[1] Exculpatory agreements are disfavored and, therefore, they are strictly construed against the party seeking to limit its liability. *See Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781, 783–84 (Colo.1989). Such agreements stand directly between two important but competing principles: freedom of contract and responsibility for damages caused by one's own negligent acts. *Id.* at 784.

■ In determining the validity of an exculpatory agreement, a court must analyze four factors:

"(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." *Jones,* 623 P.2d at 376.

The parties appear to agree that only the fourth factor is at issue here.

■ The exculpatory agreement contains two separate and distinct sections. The first section addresses the race competitor's waiver of liability and concludes with a signature block signed by Heather Del Bosco. The next section is addressed to the competitor's parents and is followed by a signature block signed by Pamela Del Bosco, Heather's mother.

There is nothing in the language of the agreement that indicates that the parent adopts the same waiver as that signed by the child. Indeed, the most reasonable interpretation of the agreement is that the first section waives the child's claims and the second section deals with the parent's consent and waiver. Construing the agreement according to the requisite standard, I conclude that only the second part of this agreement is relevant to Armando Del Bosco's negligence claim.

■ Thus, the issue to be decided is whether that second part of the agreement bars Armando Del Bosco's claims. It provides:

"By signing this Acknowledgment and Assumption of Risk and Release as Parent/Guardian, I am consenting to the competitor's participation in competitive skiing and training and acknowledge that I understand that any and all risk, whether known or unknown, is expressly assumed by me and all claims, whether known or unknown, are expressly waived in advance."

The specific terms "negligence" and "breach of warranty" are not required to appear in a waiver for it effectively to shield a party from claims based on negligence and breach of warranty. *Heil Valley Ranch,* 784 P.2d at 785. Instead courts must inquire "whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed." *Id.*

■ In determining that the parties intended to extinguish liability and that their intent was clearly and unambiguously expressed in the release, the court in *Heil Valley Ranch* noted that: (1) the agreement was written in simple and clear terms that were free from legal jargon; (2) it was not inordinately long and complicated; (3) the plaintiff indicated in her deposition that she understood the release; (4) the first sentence of the release specifically addressed a risk that described the circumstances of the plaintiff's injury; and (5) the plaintiff was an experienced rider and therefore the risk that a horse could rear and injure her was reasonably foreseeable to someone with her experience. *Id.* But see *Anderson v. Eby,* 998 F.2d 858 (10th Cir.1993) (plaintiff's experience is irrelevant to interpreting an exculpatory waiver).

---

1. Exculpatory agreements are not necessarily void as a matter of law as long as one party is not "at such obvious disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence." *Heil*

*Valley Ranch, Inc. v. Simkin,* 784 P.2d 781, 784 (Colo.1989) (citation omitted). The parties agree that the exculpatory agreement at issue here is not void as a matter of law.

The exculpatory provision applicable to Armando Del Bosco does not contain the term "negligence." The waiver is, however, written in simple and clear terms that are free from legal jargon. In addition, it is not inordinately long and complicated.

On the other hand, the provision does not specifically address a risk that describes the circumstances of Heather Del Bosco's injury and the exculpatory language is extremely broad.

> "When the parties adopt broad language in a release, it is reasonable to interpret the intended release to be as broad as the risks that are obvious to experienced participants." *Heil Valley Ranch*, 784 P.2d at 785 (quoting *Harris v. Walker*, 119 Ill.2d 542, 116 Ill.Dec. 702, 519 N.E.2d 917 (1988)).

It is undisputed that Heather Del Bosco and her parents had more than nine years of experience in ski racing. They allege, however, that prior to the race Heather was not allowed a reasonable visual inspection of the course, an inspection required by Colorado law. Colo.Rev.Stat. § 33–44–110. It is unclear whether it would be obvious to experienced ski racers that race organizers would violate a statutory duty.

Accordingly, I conclude that genuine issues of material fact remain whether Armando Del Bosco's claims are barred by the exculpatory agreement.

## 2. *Heather Del Bosco's Claims.*

Defendant contends that Heather Del Bosco is barred from prosecuting this action because she signed an "Acknowledgment and Assumption of Risk and Release" prior to participating in the race.

■ Ms. Del Bosco was fourteen years old when she signed the release and she was fifteen on the day she was injured. Defendant concedes that a contract entered into by a minor is voidable under Colorado law. *See,*

2. Courts that have decided the issue have determined that the signature of a parent does not validate an infant's contract. *Schmidgall v. Engelke*, 81 Ill.App.2d 103, 224 N.E.2d 590 (1967); *Kaufman v. American Youth Hostels, Inc.*, 13 Misc.2d 8, 174 N.Y.S.2d 580 (N.Y.App.Div.1957); *Fedor v. Mauwehu Council, Boy Scouts, Inc.*, 21

*e.g., Doenges–Long Motors, Inc. v. Gillen,* 328 P.2d 1077, 1080 (Colo.1958). The right to avoid contracts is designed "to protect minors from their possibly improvident and imprudent contractual commitments." *Id.* As a result, a party who contracts with a minor "does so at his own peril and with the attendant risk that the minor may, at his election, disaffirm the transaction." *Keser v. Chagnon,* 159 Colo. 209, 410 P.2d 637, 640 (1966). Moreover, the fact that a minor has received the benefits of a release does not prohibit the minor from later disaffirming the contract. *Simmons v. Parkette Nat'l Gymnastic Training Ctr.,* 670 F.Supp. 140, 144 (E.D.Pa. 1987).

Defendant contends that Heather Del Bosco cannot avoid the release because her mother signed it as well. Defendant has cited no case, and I have found none, holding that the signature of a parent renders enforceable a minor child's contract.[2] The Colorado Supreme Court has stated that "[e]ven though [the plaintiff's] mother had ratified the terms of the contract ... it should be noted that the approval by a parent does not necessarily validate an infant child's contract." *Jones v. Dressel,* 623 P.2d 370, 372 n. 1 (Colo.1981). By negative implication, the court left open the possibility that under certain circumstances ratification of the terms of a contract by a parent could validate a minor's contract.

■ Even assuming that Colorado would recognize this exception to the longstanding rule that children may avoid their contracts, any ratification would have to be expressed in clear and unambiguous language, especially where, as here, the defendant is claiming that the parent's signature ratifies a waiver of liability.

Nothing in the instant agreement indicates that by signing the agreement Pamela Del Bosco agreed to waive Heather Del Bosco's claims. Rather, as discussed above, the agreement sets out two separate waivers:

Conn.Supp. 38, 143 A.2d 466 (1958); *see also Julian v. Zayre Corp.*, 120 R.I. 494, 388 A.2d 813 (R.I.1978); *Wood v. Dic/Underhill & Universal Builders Supply Co.*, 144 N.J.Super. 364, 365 A.2d 723 (1976) (parent cannot release child's claims).

first the waiver of the child's claims, signed only by the child, and then the waiver of the parent's claims, signed only by the parent.[3] Therefore I conclude that Heather Del Bosco's claims are not barred by the exculpatory agreement.

### C. Ski Safety and Liability Act.

Defendant argues that the Colorado Ski Safety and Liability Act (the Ski Act), Colo. Rev.Stat. §§ 33–44–101 et seq., bars the plaintiffs' claims.

The Ski Act provides in pertinent part: "The competitor shall be held to assume the risk of all course conditions including, but not limited to, weather and snow conditions, course construction or layout, and obstacles which a visual inspection should have revealed. No liability shall attach to a ski area operator for injury or death of any competitor proximately caused by such assumed risk." Colo.Rev.Stat. § 33–44–110(2).

■■■■ Traditionally, the common law defense of assumption of the risk applied only when the injured party was fully conscious of the nature and extent of a risk and knowingly proceeded to undertake that risk. Cox v. Johnston, 139 Colo. 376, 339 P.2d 989 (1959). The Ski Act thus removes the subjective awareness element of the common law defense.[4] Statutes in derogation of the common law must be strictly construed. Van Waters & Rogers, Inc. v. Keelan, 840 P.2d 1070, 1076 (Colo.1992).

■■■■ Defendant contends that it is a "ski area operator" within the meaning of the Ski Act. This contention does not square with the common understanding of a ski area operator and the defendant cites no authority

for its position. The court's independent research also has revealed none.

Section 33–44–103(7), Colo.Rev.Stat., defines a ski area operator as "any corporation . . . having operational responsibility for any ski area[ ]." A ski area is defined as "all ski slopes or trails and other places under the control of a ski area operator and administered as a single enterprise within the state." § 33–44–103(6). Here Aspen Skiing Company, not USSA, holds the applicable Forest Service permit. Thus Aspen Skiing Company is the ski area operator and only Aspen Skiing Company may claim the limited immunity from tort claims authorized by the Ski Act.

Even if I were to conclude that the defendant is a ski area operator, I still could not grant its motion. The Ski Act requires that prior to a competition, each competitor must be given "a reasonable visual inspection of the course or area where the competition is to be held." § 33–44–110(1). Section 33–44–104(2) provides that "[a] violation by a ski area operator of any requirement of this article . . . shall, to the extent such violation causes injury to any person or damage to property, constitute[ ] negligence on the part of such operator."

Heather Del Bosco testified in her deposition that she was not permitted to view the section of the course where she was injured because that part was closed until the start of the race. Defendant responds that Heather Del Bosco voiced no objection to the unavailability of that inspection and she did not request a further inspection.

The parties have offered no evidence that indicates whether the inspection allowed was

---

3. Defendant's argument that Heather Del Bosco should be equitably estopped from avoiding the release also is rejected. Some courts have held that a minor is estopped from avoiding a contract where she misrepresents herself to be an adult and as a result obtains and retains the benefit of a contract. See, e.g., Fredeking v. Grimmett, 140 W.Va. 745, 86 S.E.2d 554, 563 (1955). But see Nelson v. Browning, 391 S.W.2d 873, 878 (Mo.1965) (infants are incapable of binding themselves by way of estoppel). Here Heather Del Bosco did not misrepresent her age. Defendant has not cited a case, and I can find none, where a court under facts similar to those here presented has used the equitable doctrine of es-

toppel to prevent a minor from avoiding a contract. See Doenges–Long Motors v. Gillen, 138 Colo. 31, 328 P.2d 1077, 1080 (1958) ("The right of an infant to disaffirm a contract is an absolute right.").

4. By providing that no liability shall attach in cases where there is an assumed risk, the Ski Act also makes inapplicable Colorado's comparative fault system, which bars recovery only when the plaintiff's negligence was as great as or greater than the defendant's. Colo.Rev.Stat. § 13–21–111.

"reasonable." In the absence of evidence concerning the specifics of the inspection and the nature of the alleged defects that existed in the race course, summary judgment would be improper.

### D. *Assumption of Risk.*

Defendant contends that the plaintiffs' claims are barred because Heather Del Bosco appreciated the risks of skiing the course and voluntarily chose to confront them. Defendant points out that Heather Del Bosco knew that: (1) there was a part of the run that she had not inspected; (2) others were having difficulty skiing that area; (3) her visibility was reduced because of weather conditions; and (4) people get hurt when they ski.

The parties do not discuss, and therefore I do not address, the relationship between the assumption of risk provisions of the Ski Act and the general assumption of risk provision contained in Colo.Rev.Stat. § 13–21–111.7. Thus, for purposes of this motion only, I will determine whether § 13–21–111.7 bars the plaintiffs' claims.

■ Section 13–21–111.7 provides, in pertinent part, that:

"[a]ssumption of risk ... shall be considered by the trier of fact in apportioning negligence.... For the purposes of this section, a person assumes the risk of injury or damage if he voluntarily or unreasonably exposes himself to injury or damage with knowledge or appreciation of the danger and risk involved."

In the absence of an express assumption of risk by contract, an assumption of risk does not necessarily serve as a total bar in comparative negligence cases. *See Heil Valley Ranch,* 784 P.2d at 785; *Loup–Miller v. Brauer & Assocs.—Rocky Mountain, Inc.,* 40 Colo.App. 67, 572 P.2d 845, 846 (1977). As stated by the California Supreme Court:

"When a risk of harm is created or imposed by a defendant's breach of duty, and a plaintiff who chose to encounter the risk is injured, comparative fault principles preclude automatically placing all of the loss on the plaintiff because the injury in such a case may have been caused by the combined effect of the defendant's and the plaintiff's culpable conduct." *Knight v. Jewett,* 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 10–11, 834 P.2d 696, 704–05 (1992).

■ Accordingly, the defendant's argument that Heather Del Bosco's assumption of risk automatically bars the plaintiffs' claims is rejected, and therefore the summary judgment motion based on Colo.Rev.Stat. § 13–21–111.7 will be denied.[5]

Accordingly, IT IS ORDERED that:

(1) Defendant's motion for summary judgment is denied; and

(2) The parties and their counsel are ordered to meet and confer within eleven days of this order in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within fifteen days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding would facilitate settlement.

---

**5.** Defendant has filed a supplemental memorandum of points and authorities arguing that *Knight v. Jewett,* 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696 (1992), and *Ford v. Gouin,* 3 Cal.4th 339, 11 Cal.Rptr.2d 30, 834 P.2d 724 (1992), should be considered regarding the assumption of risk defense. Defendant's reliance on these two decisions is misplaced. Defendant argues that it owed no duty to the plaintiff since the risks the plaintiff confronted were inherent in skiing. Defendant's argument ignores the Ski Act. The Act imposes on the defendant a duty to permit the plaintiff a reasonable inspection of the race course. The Act further provides that failure to abide by its mandates constitutes negligence. Thus, the defendant's contention that it had a duty only to refrain from recklessly or intentionally causing injury is without merit.